Good morning. May it please the Court, Christopher Key, appearing on behalf of Appellants and Defendants. I'd like to reserve three minutes of my time for rebuttal. Plaintiffs do not evidently contest defendants' position that the invocation of the conscience of the court cannot override a failure of proof as to the constituent elements of a cause of action for equitable estoppel. And consequently, unless the Court has specific questions about that position, I'd like to simply focus on the failure of proof as to the constituent elements. This case comes before the Court following a motion for summary judgment in which the material facts offered in support of defendant's motion are not in dispute. Plaintiffs bear the burden of proof at trial in establishing the elements of equitable estoppel. And under this Court's decisions, those elements are knowledge of the true facts by the defendants, intent to induce reliance, ignorance of the true facts by the relying party, and detrimental reliance. That may be so as to equitable tolling, the third element, ignorance of the true facts. But isn't there a difference between equitable tolling and equitable estoppel in that fraudulent concealment by the defendants can be so inequitable as for the Court to say, you cannot use the statute of limitations? That is correct, Your Honor. But there's a further step to that, that once the Court, and this was our argument with respect to the conscience of the court, that once the Court has invoked the equitable remedy of fraudulent that attends to fraudulent concealment, the parties still that are urging what is in the nature of an affirmative defense must prove the constituent elements that have been established under the Court's decisions. But knowledge of the true facts, in this case that the police killed Amaro, right? Knowledge of the true facts, when there is inequitable conduct by the police that tells Montoya a different story, doesn't that conduct estop the police and the city from using the statute of limitations, regardless of the state of her knowledge? No, Your Honor, because they would still have to prove the element of reliance  Well, she's relied because that's the proof of her claim relies in part on evidence to be provided by the police, the statements of the police, the reports of the police, the truthful testimony by the police. She can't prove the case otherwise. But she can, Your Honor, because she has actual knowledge of the cause. She had a hearsay statement by her late son. The cops did it to me. He's dead. But that would be sufficient to file a lawsuit. Oh, she filed a claim. There's no question about that. She had knowledge that she had a claim. But the issue I have with you is, is the conduct of the Oakland Police Department and therefore the city of Oakland, if there is liability, such that the court should estop you in good conscience from using the statute of limitations without having to prove that she knew that she had a claim. Your Honor, the U.S. v. Ruby case, which is this Court's decision, says that a party asserting fraudulent concealment, equitable estoppel, cannot make that claim without proving the constituent elements of the claim. That's cited in our brief. And so as I'm understanding the question that Your Honor is posing, you're suggesting and by all means correct me if I'm misunderstanding, that a party can merely point to evidence of the concealment and thereby leapfrog over proof of the constituent elements, which is to say the manner in which the nominal concealment has prevented them from filing the lawsuit, which is the standard that is established under Santa Maria. Well, once she proves that the concentrated and collusive lying by the city of Oakland has prevented them from filing the lawsuit, she went around and tried to get five attorneys. Finally, Mr. Brewers took the case. Wouldn't that be sufficient as a tribal issue of fact to submit to a jury? I don't believe it can, Your Honor, because once again, we're avoiding the constituent elements of a claim to function. We're avoiding the constituent elements of a claim to function.  And what constituent element are we avoiding? We are avoiding actual knowledge, which is the standard set forth in the Rutledge case, and we are avoiding the actual reliance, reasonable reliance, which every decision requires that there be some proof that whatever misconduct occurred, that there was reasonable reliance on affirmative conduct on the part of the plaintiff. For the purpose of filing a claim, she knew that her son had been killed by the police, but she couldn't prove it because the police were lying to her and fraudulently concealing the evidence. But it didn't prevent her from filing a lawsuit. In that regard, Your Honor, it's really no different from many other cases. What you're saying is she could have filed a lawsuit and then taken the deposition with subpoenas due sustaicum of the police and then gotten the evidence. That's correct. That's correct. And the evidence that she did not rely on the statements of any of the – on the conduct of the defendants is overwhelming in this case, that she didn't – at no point was there a belief that anything had happened in a manner other than the manner in which her son had told her. And the specific evidence for that, which is cited in the record, are the flyers that they put up and the government claim that was – that Your Honor referenced earlier. I'm not understanding when you say that she didn't rely. The whole problem here is that she filed this – is the – is the timing of her filing. And she says she filed it late because she didn't know what the true facts were. But she did know the true facts, and that's evident from the record. The – what was nominally concealed from her was the – the only thing that was concealed from her by their reckoning is the – she was unable to obtain a police report. I'm not aware that that has – Well, but the significance of that was that she was not aware of the seriousness of her claim. But the – If you – if you think all you've got is a fender bender, you may not sue. But if you – if you find out that the result of it is that you've been – your whole You don't really know the basis for the suit that you're going to file, so. Your Honor, if I may, here is the actual text from the government claim that was filed. And the government claim was filed, according to the record, in order to preserve her right to sue. And the standard that this Court has established is that the misrepresentations, the misconduct, must be relied on in such a way that it prevents her from filing a lawsuit. This – the government claim was an – was part of a litigation scheme. This is not scheme. That's litigation plan. And the litigation plan had been enunciated by Jerry from the very beginning. The record is filled with references from him saying he planned to sue. This is what he wanted to do. The flyer that was put up was pursuant to his plan to sue the city. So I'm – the record would seem to suggest rather strongly that she was not prevented from filing the lawsuit. I guess you're really arguing, aren't you, that if you give enough information, provide enough – if there's enough information, perhaps even the defendant gives enough information so that the plaintiff is on notice that there is a claim, then they can – they can fail to provide anything else. Well, so long as the failure to provide anything else they can then rely on the statute of limitations and say, okay, you're too late. But if the – if the information that has not been provided is, in a sense, a corollary – in this case, it was merely corroborating evidence of the evidence that she already knew. If I may, let me – here's the text of the claim. This claim is based on the use of excessive force by officers of the Oakland Police Department against Jerry Andrew Amaro III during the course of his arrest on March 23, 2000. Mr. Amaro died as a result of the beating he received. The excessive force used by the police officers and their failure to provide adequate medical emergency assistance to Jerry Andrew Amaro III during his arrest and subsequent custody at the Oakland City Jail caused or substantially contributed to his death. The injuries of the decedent were sustained in the vicinity of the 7200 block of Holly Street in Oakland. Mr. Amaro complained of pain when he was booked into jail but was not provided medical treatment. He was transferred to Santa Rita Jail and released on March 28. He died April 23, 2000, as a result of the injuries sustained during his arrest. That reads like a Section 1983 complaint. Sotomayor, isn't all of that from Mr. Amaro's own statements to his family? That's correct. All of that is from his statements. So couldn't you say that while she had his statements, the family is still truly ignorant of the facts? And that's the reason why they don't file the lawsuit, because they can't get a lawyer to do it, because there's no corroboration, there's nothing in furtherance other than Jerry Amaro's statements. That would be an – what happened here would be something that might happen in any instance where the plaintiff is deceased. The evidence that is in the case. Well, no, because you might have the police report and you might have people who might be more forthcoming with what the true facts were, as opposed to the scenario we have before us. But I'm – I may be repeating myself here, but the evidence that she did have was sufficient to go forward with a lawsuit. I'm not – What you're saying is that the constituent elements of equitable estoppel do not require that the plaintiff have the evidence, as long as she has the knowledge. She would have to have sufficient evidence to get over the – the pleading bar. That's not evidence. Those are allegations. Well, that's correct. That's exactly right. And that – that you're – That is some knowledge, perhaps not provable in court, because the man's dead and it would be a hearsay statement, but some knowledge of what happened sufficient to frame a complaint which would survive Iqbal. That's correct, Your Honor. In that sense, it's no – And she had that. And she had that. And in that sense, it's no different from any lawsuit. When a plaint – I mean, when a case is presented on the basis of allegations and it – you know, in theory, there are – I would say that the exercise of equitable estoppel to stop a defendant from using the statute of limitations as an affirmative defense is, under Ninth Circuit court law, subject to fulfillment of each of the four constituent elements which you have recited. That's correct, Your Honor. And that we are unable to depart from that doctrine. That is correct, Your Honor. That's my position. I understand my – I'd like to reserve the remainder of my time. Thank you. Thank you. Thank you, Mr. Chief. Good morning. May it please the Court. My name is Julie Houck. I represent the plaintiffs in this case. The doctrine of equitable estoppel is based on the principle that no person should be able to take advantage of their wrongdoing in a court of justice. And that's exactly what the defendants are trying to do here. Ms. Houck, answer this question for me. Based on the claim which Mrs. Montoya filed with the City of Oakland, what further knowledge did she need to file a complaint? The problem in this case, Your Honor, is that Sergeant Galindo, the lead homicide investigator for the City of Oakland, told Mrs. Montoya. I know those facts, but you're not answering my question. What further knowledge did she need under the third element of the case recited about your opponent? Well, the further knowledge is, number one, she needed to know that he wasn't killed by a gang or drugs, as Sergeant Galindo told her. She knew that. She said so in the claim that she filed. That's not true, Your Honor, because Mr. Amaro was arrested on March 23, 2000. He didn't die or be found dead until April 21, 2000, a month later. What Sergeant Galindo did was raise the prospect of a completely independent event occurring in which Mr. Amaro was killed. And that was the missing piece, and that was the hurdle that the City of Oakland put up to the plaintiffs, that they did not have any information or evidence to disprove the possibility that Mr. Amaro had been killed by a completely independent incident. Which did not impede her from filing her claim pursuant to Section 910 of the government code. The problem, Your Honor, is that's confusing equitable tolling with equitable estoppel. It would be true under equitable tolling that based on the knowledge she had from her son, she could have filed a lawsuit in court. There's no question that they are not entitled to equitable tolling. Equitable estoppel, however, doesn't focus on whether the plaintiff had notice of her claim. Because in all the cases we cited, including Gomez v. City of Torrance, Bell v. City of Milwaukee, Allen v. A.H. Robbins, the UA Local 343 case, Atik v. Najour, McLeoria v. Boeing, Bernson v. Browning Ferris. Every single one of those cases, the plaintiffs had some knowledge that they had a potential claim. Every single one of them. They were not totally ignorant that there were no facts supporting their claim. What the point of equitable estoppel is, is that even though you have a suspicion or a belief that you may have a potential claim, you cannot go forward because of the fraudulent concealment and misrepresentations of the defense and the lack of the forthcoming truth of the evidence supporting your claim because of what the defendants do. And how you could not go forth. But let me ask you if you can answer this. After filing her claim, which was prepared by Mr. Burrus, a distinguished attorney in the East Bay, why could she not have filed a complaint, a wrongful death case in California and notice a deposition of Galindo or the person most knowledgeable about the investigation and subpoenaed all documents such as a police report and a homicide report at that time and determined what the facts were by compulsory process? Well, again, Your Honor, that confuses equitable tolling with equitable estoppel because under equitable estoppel, it's the conduct of the defendant that dissuades the plaintiff, not necessarily prevents them from any possibility of filing a lawsuit, but dissuades them from going forward with the lawsuit. And in this case, the plaintiffs relied, using the term reliance as one of the constituent elements, on the defendant's misrepresentations in not going forward. And the defendants keep talking about, well, there's no triable issue of fact here about her reliance. In the Allen v. A.H. Robbins case, the Ninth Circuit held that in order to prove reliance in a fraudulent concealment case, the plaintiff can offer evidence that she would have acted differently had they had the full truth. I don't think there's a jury around that wouldn't believe that this particular plaintiff, Mrs. Montoya, would not have brought a lawsuit within the statute of limitations had the police not covered up and lied about what happened to her son. She was diligent from the day one trying to find out what happened to him. To say that she didn't rely on what the police told her, their fraudulent concealment, their failure to be truthful, is just not having any merit whatsoever. And that's the difference between equitable tolling, where if you've got some information, you need to go to court. The equitable estoppel looks at what the defendant did to impede that or dissuade the plaintiff from going forward. Kennedy, you think it's enough to dissuade, although the person is not, in retrospect, barred or impeded? That's correct, because if you look at the case that says that? That's a Ninth Circuit unpublished decision that we cited for persuasive value. You can't cite an unpublished decision. We can cite it for persuasive value, Your Honor. For persuasive value. Yes, that's what I said. In that case, it was a shooting police case where the person was killed by the police. Unbeknownst to the plaintiff, there was a surveillance videotape of the shooting. The officers lied in their reports. And unlike this case, the plaintiffs in that case were given redacted copies of the police reports, so they at least had that. They knew their son had been killed by the police. They had redacted police reports. They really believed there was no basis for the shooting of their son in that case, too. And if you look at the district court record in that case, the plaintiffs in that case filed a wrongful death claim. They had an attorney. They did all that within the statute of limitations, just like here. But in that case, it came out later, after the statute ran, that there was a surveillance videotape that impeached the officer's account and showed they lied. And in that case, the Court held that it was a triable issue of fact whether the doctrine of equitable estoppel barred the defendants from raising the statute of limitations. I think your local 43 case was pretty good on that ground, isn't it? Pardon me? Your local 43 case was also pretty good. Yes, because in that case, the union presented a charge to the NLRB and withdrew it when the NLRB thought they didn't have enough evidence because the employer in that case lied. And later on, they found out the truth and they went forward and the Court said it was a triable issue of fact and the equitable estoppel. One of the worst cases for the defense and one of the best ones for us is Bell v. City in Milwaukee. That case has many parallels to what happened here. In that case, it was a police shooting where the police fabricated the account of the shooting, planted a gun in the deceased's hand, lied about it for many, many years. The plaintiff in that case filed a claim, filed a wrongful death lawsuit in state court. And then many years later, after 20 years, one of the officers decided to have a truth telling session and came forward and told what happened. And the plaintiff in that case sued. That was a Seventh Circuit decision. And on appeal, the Court rejected the defendant's claim that it was subject to the statute of limitations and held the doctrine of equitable estoppel prevented them from raising the bar of the statute of limitations. Another case, it's not a police case, but it was the Allen v. A.H. Robbins case, Ninth Circuit. That was a products liability case involving an IUD. In that case, the plaintiff's doctor told her within the statute that it was likely that her symptoms were being caused by the IUD. A.H. Robbins had a lot of literature out saying that the IUD was safe, it wasn't a problem. Then many years after the statute of limitations ran, the plaintiff saw 60 Minutes, a story on television talking about how the company had concealed the dangers of the IUD. The plaintiff sued, and in that case, the Court said that even though she had evidence and information that the IUD had caused her problems and her health issues, the issue on reliance was whether or not she would have acted differently had that information not been concealed from her. Let me ask you a separate question. Let's suppose that we take your point that the representations of Galindo regarding how Amaro died are fraudulent concealment. Does the doctrine of respondeat superior apply here in a 1983 case to make the City of Oakland responsible for Galindo's actions for purposes of equitable establishment? There's no respondeat superior under 1983, Your Honor. However, the plaintiff does have a municipal liability case here. The Chief of Police affirmed and approved the investigations of what happened here, ratified what happened. He was aware of the facts. In fact, the problem with this case with the City of Oakland is the Chief of Police, if you look at the evidence in the light most favorable to the plaintiff, knew these officers were lying. And he took the case away from homicide where they could have been criminally prosecuted, switched it over to internal affairs where their compelled statements could not be used against them in a criminal proceeding, and said that they would be immune from disciplinary action if they just came forward and changed their story and told the truth. Do you also have enough evidence in your motion resisting summary judgment to fulfill the requirements of Monell? I believe we do, Your Honor, because the Chief of Police is the policymaker for the City of Oakland. There's case law on that holding the Chief of Police of the City of Oakland as the policymaker. And he made that policy and ratified what they did. He never found a single one of these officers responsible for using force on Mr. Romero. There was never any finding of excessive force. That's a ratification. It's a ratification issue, Your Honor. The question that was certified by the district court for us to decide, as I understand it, is whether the doctrine of equitable estoppel should apply where a plaintiff believes she has a Section 93 claim but is dissuaded from bringing the claim by affirmative misrepresentations and stonewalling by the police. Now, that's a question of law, I take it. That's a question the court certified as a matter of law. Right. And I think that issue is clearly resolved in favor of the plaintiffs because of the law that I just went through with the cases. I understand that. In our particular case, after you get past that issue of law, I believe there's triable issues of fact that a jury needs to determine about the application of equitable estoppel under the facts of the statute. That was my question. If we were to agree with you that estoppel can apply where there's a reliance on affirmative misrepresentation, the triable issues would be what? Whether there was reliance? Well, one triable issue would be whether they had information to rebut Sgt. Galindo's account of this phantom gang-beating drug thing. Whether they knew that it was a reliance. Exactly. And they didn't have any proof of that. And I think a jury, a reasonable jury could conclude that they had no evidence to rebut what Sgt. Galindo was saying and could rely on that. Then the other issue is the reliance. And I don't want to say it's a summary judgment issue in this case for the plaintiff because the way Mrs. Montoya had a long history of mental illness and anxiety disorder that made it very hard for her, in general, to be proactive. Under this scenario, she's grieving the death of her son. She has this anxiety disorder. Nevertheless, she's out there pounding the pavement, pounding the police department door, begging for the reports, wanting to know what happened to her son, putting up flyers, trying to get witnesses. There's no question, I think, that a jury would find that she relied on the officer's misrepresentations, fraudulent concealment, and not going forward. And that was also supported by the fact she couldn't get a warrant. But that's not, I take it, that's not what we're deciding today. No. Those are triable issues of fact. Right.  I'm just trying to understand procedurally what it is that we're deciding. If we were to agree with the district court on the issue that the court certified, then it goes back and those things will have to be resolved. That's correct. And I think that a side issue that the defendants have not prevailed on in this appeal is that they cannot show that the district court abused its discretion in denying summary judgment on those issues of equitable estoppel. And that's why we need the trial and the merits. Okay. Any further questions? No. Thank you, Your Honor. Try to distinguish that local union 43 case, would you please? Yes, Your Honor. In that case, there was actually a sworn declaration from the, I'm not sure where they were in the procedural mix because it was a hearing before the NLRB. But in any event, that party that was accused of double breasting, there was a sworn declaration from them asserting that they had not engaged in that conduct. The NLRB, which was the body that was reviewing the events, said, we cannot, we, the NLRB, cannot proceed with this matter on the basis of this record. So in that case, in a very real sense, the complaining party was prevented from going forward by the misrepresentation. And that's what Mr. Burris told Ms. Montoya when she first came in. Given the evidence that Galindo has given you and nothing to contradict it, I can't proceed with that kind of a record. But that, if the unwillingness of an attorney to proceed with a case is the standard, then that would do away with the... It would be up to the jury to decide whether it was reasonably justified for him to have said that. But in this case, Your Honor, the, again, I'm going back to the elements of the claim of equitable estoppel are what should determine this. And... Well, in the Union 43, Local 43 case, there's no question that the local thought that the man was double-breasting, right? That's correct, Your Honor, but... They knew that. And they certainly weren't relying on his statement that he wasn't double-breasting because they went to the NLRB. But... So why isn't NLRB in 43 in the same situation as Mr. Burris and the local union in the same situation as Ms. Montoya? Because in the NLRB case, the board that was hearing the matter made the determination that you can't go forward with this case. And here Mr. Burris said you can't go forward. But Mr. Burris has nowhere near the authoritative. He, by him saying I can't, I'm not... All you have to do is to walk down to the Alameda County courthouse and file a complaint. Or here. The plaintiff could have done that. All that happened here was that an attorney said I'm not going to take your case. Five attorneys. That is not preventing or dissuading a plaintiff from filing a lawsuit. All right. We are into the red. You think that's a matter of fact for a jury? I don't, Your Honor. Not on this record. All right. The case just argued is submitted for decision. That concludes the court's calendar for this morning. And the court stands adjourned.
judges: Sammartino, Schroeder, Bea